Filed 10/1/13  P. v. Dabney CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERICA DENISE DABNEY,<br><br>    Defendant and Appellant. | B247412<br><br>(Los Angeles County<br>Super. Ct. No. VA098564) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

    Law Office of Margaret E. Dunk and Margaret E. Dunk for Defendant and Appellant.

    No appearance for Plaintiff and Respondent.

Defendant and appellant, Erica Denise Dabney, appeals from the judgment entered following revocation of probation previously granted after entry of her plea of no contest to the serious felony of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] during the commission of which she inflicted great bodily injury on the victim, not an accomplice to the offense (§ 12022.7, subd. (a)). The trial court sentenced Dabney to four years in state prison. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

At approximately 11:00 p.m. on November 18, 2006, Dabney went to the home of Denise Johnson at 9514 Kalmia Street in Los Angeles. Dabney, accompanied by her sister and her son, walked up to Johnson's house and, when Johnson answered the door, Dabney asked Johnson where her children were. When Johnson told Dabney her children were not at home, Dabney, her sister and her son entered Johnson's home and Dabney, while in Johnson's living room and using a "strong[] voice," asked Johnson what had happened. Johnson told Dabney her children had told her Dabney's daughter had stolen Johnson's earrings. When Dabney then told Johnson she had "the MF earrings," Johnson first asked Dabney what she was doing with them, then asked Dabney's sister and son to leave the house. Johnson believed that, as two women, she and Dabney could talk about it and work out the problem. They "didn't need her sister and [her] son in there." However, Dabney's sister and son did not leave the house. They, instead, walked into a hallway. Dabney remained in the living room, reached into her shoe and started "swinging" at Johnson. Johnson then swung back at Dabney.

As the two women became engaged in a fist fight, Johnson felt a "strong punch in [her] arm," then a pain as though Dabney had used a "strong knife" to cut Johnson in the

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     The facts have been taken from the transcript of the preliminary hearing.

shoulder.[3]  Although Johnson did not see anything in Dabney's hand, when she reached up to her shoulder, she realized she was bleeding.  Johnson then noticed she was not only bleeding from her shoulder, but also from three cuts on her upper left arm.  Dabney told her sister she had gotten the "[b]itch" then, accompanied by her sister and son, ran from the house.  Although she had seen her retrieve something from her shoe, "from the beginning of the fight to the end of the fight" Johnson had not seen an object in Dabney's hand.

After Dabney, her sister and her son left Johnson's house, Johnson's husband called 911.  Paramedics arrived and transported Johnson to the hospital where she received stitches for all four wounds.  In total, Johnson received "[a]bout 17" stitches.  After receiving the stitches, Johnson was required to attend physical therapy for approximately one and one-half years.  The injuries inflicted by Dabney had affected Johnson's ability to lift her arm and to "pick things up."  In addition, Johnson suffered pain in her arm and was required to take Motrin and "Tylenol three."  Johnson still suffers from pain in her arm when it is cold.

2. *Procedural history.*

On October 15, 2009, a one count information was filed in which it was alleged Dabney committed the crime of assault with a deadly weapon in violation of section 245, subdivision (a)(1), a felony.  It was further alleged that, during the commission of the assault, Dabney "personally inflicted great bodily injury upon Denise Johnson, not an accomplice to the [assault], within the meaning of" section 12022.7, subdivision (a), causing the assault to be a serious felony within the meaning of section 1192.7, subdivision (c)(8).

After the preliminary hearing, counsel for Dabney made a motion to dismiss the matter, asserting the prosecutor had presented insufficient evidence to support the charges.  Counsel argued it seemed "like a mutual combat situation where the victim

_____

[3]  Johnson had been stabbed with a knife on a previous occasion and knew what it felt like.  She had also been hit with a ring before and knew "the difference between being hit by a ring and being stabbed with a knife."

3

never saw any weapon and just suffered injuries that could have been caused by a ring or by other persons present . . . ." The trial court indicated that "under the statute a deadly weapon is any object, instrument or weapon, which is used in such a manner as to be capable of producing and likely to produce death or great bodily injury. So whether it's a knife or ring, it's capable of producing great bodily injury." The court believed the object used by Dabney "satisfie[d] the statute." The prosecutor indicated if the court was uncomfortable with the allegation the assault had been committed with a knife, the information could be amended to allege the injuries had been inflicted with a "metal object." The trial court granted the motion to amend, then determined there was sufficient evidence to hold Dabney to answer to the charges.

At proceedings held on January 8, 2010, Dabney indicated she wished to withdraw her earlier plea of not guilty and plead no contest to the alleged charges. After being informed the alleged crime amounted to a strike within the meaning of the Three Strikes law and she faced a maximum term of four years in state prison, Dabney indicated she still wished to plead no contest to the charge alleged in count 1 of the information. In exchange, Dabney was to be sentenced to four years in prison, the sentence was to be suspended and she was to be granted three years probation, including 60 days of work at Caltrans.

Before taking her plea, the prosecutor advised Dabney she had the right to a jury trial, the right to confront and cross-examine witnesses who testified against her, the right to use of the court's subpoena power to secure witnesses to testify on her behalf at no cost to her, and the right to remain silent. After indicating she understood and was willing to "give up each of those rights," the prosecutor informed Dabney there were consequences to her plea. The prosecutor stated: "You'll be placed on probation. If you violate that probation," "you could go to state prison for four years . . . ." In addition, the prosecutor advised Dabney her plea could "be used to enhance [her] sentence on any future case. In fact, [she was] pleading to a strike. So if [she] pick[ed] up a felony case in the future, it [could] be used to double the sentence on that case."

4

After indicating she understood the consequences of her plea, Dabney pled no contest to "the charge in count 1, [a] violation of . . . section 245, assault with a deadly weapon," and admitted having used a weapon, "a metal object," during the offense. The trial court then referred to a form which Dabney had filled out indicating she had understood and waived her constitutional rights, understood the consequences of her plea and was "freely and voluntarily" entering her plea of no contest to the alleged charge and admitting any special allegations or enhancements. After conferring with her counsel for one last time, Dabney indicated she still wished to enter the no contest plea and admit the use of a weapon. The trial court accepted the plea, adopted the findings set forth in the form and found Dabney had "expressly, knowingly, understandingly, and intelligently waived her constitutional rights and [found Dabney's] pleas and admissions [had been] freely and voluntarily made with an understanding of the nature and consequences." The trial court further found there was a "factual basis for the plea," accepted the plea and found Dabney guilty.

The trial court sentenced Dabney to the "high term" of four years in state prison, suspended imposition of sentence with the exception of the 21 days of presentence custody credit which she had served and for which she was given credit, then granted Dabney three years probation under various terms and conditions, including that she "obey all laws, rules, and orders of the court and of the Probation Department." In addition, she was to pay a $30 court security fee (§ 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), a $200 restitution fine (§ 1202.4, subd. (b)) a stayed $200 probation revocation restitution fine (§ 1202.44) and restitution to the victim in an amount to be determined by the Probation Department. The trial court then dismissed all remaining counts and allegations.

At a hearing held on December 16, 2010, the trial court indicated it was in receipt of a "derogatory [probation] report" which indicated Dabney "had some issues regarding anger management." The court continued, stating it was inclined "to take the admission [that day], order [Dabney] to complete [an] anger management program, and . . . admonish her that any additional violations, especially involving force and violence, or

5

any anger issues, [would] result in state prison." Counsel for Dabney responded that "[t]hat would be fine" and "[t]hat would be [Dabney's] inclination."

After waiving her right to a formal probation violation hearing, Dabney admitted she was in violation of her probation. The trial court then revoked probation, reinstated it and ordered Dabney to "enroll [in] and complete an anger management program as directed by the Probation Department." In her support, Dabney's counsel informed the trial court she was "already enrolled in [a] program [and] . . . involved in a lot of other support programs trying to address these issues."

At a hearing held on October 11, 2012, the trial court noted Dabney had not performed her "60 days of Caltrans." Dabney explained to the court that when, three weeks earlier, she had gone to Caltrans, she was told she could not do the work because she suffers from scoliosis. Dabney was told to report to her probation officer and have the condition of probation changed from Caltrans to community service. The trial court directed Dabney to return in three weeks with medical evidence indicating she was unable to work at Caltrans. The court indicated, after viewing such documentation, it would change the requirement to community service.

On November 9, 2012, the trial court indicated, because she had not completed her community service, it would "modify and extend" Dabney's probation to January 14, 2014. In the interim, Dabney was ordered to enroll in and complete 60 days of community service.

Dabney again appeared before the trial court on January 24, 2013. Dabney's counsel indicated the issue at this proceeding was whether Dabney had "picked up a new arrest." Counsel stated he "[did not] know what . . . [was] going on with that." The prosecutor then indicated "the concern from the People's perspective . . . [was that Dabney] initially refused to do a breath sample and then subsequently complied and blew a point 19 and a point 18 and then . . . declined any [further] tests." In addition, the probation report indicated "she ha[d] prior under-the-influence issues." Under these circumstances, the prosecutor requested that Dabney be remanded and a formal probation violation hearing held. The trial court granted the prosecutor's request, remanded

6

Dabney without bail, ordered a supplemental probation report and set the matter for a hearing to be held in February 2013.

At the February 7, 2013 proceedings, the trial court recognized Dabney had been charged with driving under the influence of alcohol. Accordingly, the court set a formal probation violation hearing for March 7, 2013.

At the formal probation violation hearing held on March 7, 2013, the trial court indicated Dabney had received notice regarding the nature of the violation, "which was specifically a new arrest for D.U.I." The court noted, although the driving under the influence case had not yet been litigated, the People intended to proceed with the hearing on the probation violation. The People called as a witness the officer who had arrested Dabney for driving under the influence. California Highway Patrol Officer Alexis Magana had observed Dabney drive onto the northbound 101 Freeway. As Dabney "transition[ed] from [the] northbound 101 to the westbound 101, [her] vehicle drifted from the number three lane to the number two lane." She then "drifted out of the lane to the right and then back into the number two lane." As Dabney had committed a traffic violation, the officer followed her as she exited the freeway, then initiated a traffic stop. When the officer approached Dabney's vehicle and spoke with her through the open driver's side window, she detected the "strong odor of alcohol" and noted Dabney had "bloodshot, watery eyes" When Magana then asked Dabney for her driver's license, Dabney told her she did not have one. Dabney, however, admitted she had been at a party and had been drinking. When the officer asked Dabney to get out of her vehicle, "[h]er gait was slow and unsteady" and she was unable to pass various field sobriety tests. After the officer then performed a "field breathalyzer" test, she concluded Dabney "was driving while under the influence of an alcoholic beverage."

When Officer Magana asked Dabney if she would submit to a blood, breath or urine test, Dabney initially stated she wished to have her doctor or lawyer present. However, after Magana transported Dabney to the police station in her patrol car and Dabney spoke with the sergeant there, she agreed to take a breath test. The results of the

7

test indicated Dabney had a blood alcohol level of .19 or .18. These results were slightly lower than those Magana had obtained in the field.

In addition to Officer Magana's testimony, the People submitted as evidence of Dabney's failure to comply with the terms of probation an addendum to the original probation report which indicated Dabney had failed to provide proof of having enrolled in community service.

Dabney testified on her own behalf. She stated that on the night of her arrest, a friend had initially been driving the car. When her friend began "swerving," Dabney became frightened and she instructed her friend to pull to the side of the road. The friend did so and Dabney, who believed she could do a better job of driving, got into the driver's seat, drove to the nearest exit, then pulled off the freeway. As she did so, the officer pulled her over. Before she was placed under arrest, it had not occurred to Dabney that she should not drive because she had no valid license and had been drinking alcoholic beverages.

Dabney admitted she had not completed the ordered community service. Although she had gone to the Community Service Department, because she had only half the amount of cash necessary to enroll, the Department had rejected her.

Dabney remembered that, at a hearing held on December 16, 2010, the trial court had admonished her "that if [she] committed another act of violence or force, [she was] going to state prison." In addition, Dabney admitted she had violated the law by driving with "a suspended/revoked" license. Moreover, she had been convicted in another jurisdiction of driving with a suspended license in violation of Vehicle Code section 14601.2, subdivision (a) and had been placed on probation for the offense.

When asked if she was "aware that [she had] made a promise to this court that [she] would obey all laws," Dabney responded, "Under a violent crime, yes." When the prosecutor informed Dabney it was all laws, she indicated, "I was confused about that. I thought it was for violent. [¶] . . . [¶] [] I did not understand . . . . I thought it was force and violence. I didn't know it could have been a misdemeanor."

8

After Dabney completed her testimony and the parties argued, the trial court stated that, approximately six months after she had been placed on probation in this matter, Dabney had "pick[ed] up a case for driving on a suspended license and [had been placed] on probation." The court indicated it had not been aware of that case. The trial court then noted that in December 2010, Dabney had admitted committing vandalism against a family member. At that time, the court had ordered Dabney to complete an anger management program and she was "admonished that any additional violations, *especially* involving force and violence or any anger issue, [would] result in state prison." (Italics added.) The court continued, "I didn't tell her, look, you can commit any other kind of crime you want, so long as [it does not involve] force and violence . . . ."

The trial court allowed Dabney to personally make a number of comments. She stated, with regard to her most recent arrest for driving under the influence, that she had not intended to break the law. The trial court, however, found "by [a] preponderance of the evidence that [Dabney was] in violation of her grant of probation." The court then imposed the previously stayed term of four years in state prison. The trial court awarded Dabney presentence custody credit for a total of 127 days then advised her of her right to appeal.

Dabney filed a timely notice of appeal on March 7, 2013.

## CONTENTIONS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record.

By notice filed June 14, 2013, the clerk of this court advised Dabney to submit within 30 days any contentions, grounds of appeal or arguments she wished this court to consider. With this court's permission, Dabney filed a supplemental brief on August 1, 2013.

In her brief, Dabney first contends she was informed by the trial court she would be considered to be in violation of probation only if she committed an offense involving "anger," "force" or "violence." The record, however, reveals otherwise. After Dabney

9

entered her plea, the trial court sentenced her to four years in state prison, suspended imposition of sentence and granted Dabney three years probation under various terms and conditions, including that she "obey *all* laws, rules, and orders of the court and of the Probation Department." (Italics added.) Then, at a hearing held on December 16, 2010, the trial court indicated it was in receipt of a "derogatory [probation] report" which indicated Dabney "had some issues regarding anger management." The court continued, stating it was inclined "to take the admission [of a probation violation that day], order [Dabney] to complete the anger management program, and . . . admonish her that *any* additional violations, *especially* involving force and violence, or any anger issues, [would] result in state prison." (Italics added.) At no time did the trial court advise Dabney that she could be found to be in violation of probation only if she committed an offense involving anger, force or violence. The trial court clearly indicated she could be found in violation of probation if she violated *any* laws, rules or orders of the court or Probation Department.

Dabney also contends she should have been given presentence custody credit against her state prison term for the time she spent on probation. The contention is without merit. In the last several years, the Legislature has passed bills providing for more generous awards of presentence conduct credits. (See *People v. Garcia* (2012) 209 Cal.App.4th 530, 534-535.) However, under no circumstances may a defendant be given credit for time during which he or she was not in "custody." (§ 2900.5, subds. (a)-(g); see *People v. Davenport* (2007) 148 Cal.App.4th 240, 245, quoting *People v. Darnell* (1990) 224 Cal.App.3d 806, 809 ["It is not the procedure by which a defendant is placed in a facility that determines the right to credit, but the requirement that the placement be 'custodial,' and that the custody be attributable to the proceedings relating to the same conduct for which the defendant has been convicted. [Citations.]"].) Here, Dabney was given presentence custody credit for all the time she spent in custody with regard to this case. She is entitled to no additional credits.

10

**REVIEW ON APPEAL**

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities.  (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

11